**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DANA J. ABRAHAM, individually and as Class Representative for all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NUMBER: |
| v. | ) ) | 1:14-CV-03485-RWS-JFK |
| MIDLAND FUNDING LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Dana J. Abraham, and files this, her Response in Opposition to Defendant's Motion for Summary Judgment, and shows this Honorable Court the following:

**I.  *INTRODUCTION***

Defendant is incorrect that the "*entire* basis for Plaintiff's lawsuit is that Midland Funding violated the Fair Debt Collection Practices Act ("FDCPA") by failing to provide certain disclosures in a summons on a Georgia magistrate court Statement of Claim form" Defendant used in a collection lawsuit against Plaintiff. *See Doc. 30-2, p. 1 (emphasis added)*.   Significantly, Defendant further violated

the FDCPA by imposing an unnecessary burden upon Plaintiff when Defendant erroneously informed Plaintiff that Plaintiff's answer to Defendant's collection lawsuit required Plaintiff's signature to be *notarized*.   The law does not require Plaintiff's signature to be notarized.

Defendant filed its collection lawsuit against Plaintiff in the Magistrate Court of Fulton County on March 25, 2014.   The General Assembly's substantial changes to the required contents of the magistrate court summons became effective on July 1, 2013, almost ten months prior to the filing of Defendant's collection lawsuit.   *Laws 2013, Act 173, § 3, eff. July 1, 2013*; OCGA § 15-10-43(c).

Defendant failed to use the statutorily prescribed form [see OCGA § 15-10-48] and chose instead to use the clerk's outdated summons form that did not incorporate the substantive, statutory changes that went into effect almost ten months earlier.   The various clerks' forms cited to by Defendant in its Affidavit of Christopher Butler [*Doc. 30-6*] were all created by court clerks.   These forms fail to meet the statutory standard of OCGA §§ 15-10-43(c) and 15-10-48 in that the forms improperly require that an answer be *notarized*; and omit important

disclosures regarding summoning witnesses, filing counterclaims, and requesting additional time to respond to the complaint.[1]

By its own admission, "Midland Funding LLC is one of the nation's largest buyers of unpaid debt."[2]  Consumers would suffer greatly if debt buyers like Midland were successful in insulating themselves from the illegal acts of their collection agents.

## II. __STATEMENT OF UNDISPUTED FACTS__

Plaintiff disputes some of Defendant's Statement of Material Facts as either being untrue or not material.   In Defendant's Fact No. 22, Defendant states "Midland Funding and Greene & Cooper do not have control over which forms magistrate courts in Georgia choose to use and distribute to the public for use in their courts.  *See* Murphy Dec. ¶ 8; *See* Cooper Dec. ¶ 6."  *Doc. 30-1.*  While it is axiomatic that Defendant cannot control what clerks do and what legal advice, incorrect or not, may be issued by a clerk, Defendant and their agent-attorneys

---

[1] Defendant's notice did not inform the consumer that "[i]f you wish to have witnesses summoned, see the court at once for assistance; [i]f you have any claim against the plaintiff, you should notify the court at once; [i]f you admit the claim, but desire additional time to pay, you must come to the hearing in person and state the circumstances to the court."  OCGA § 15-10-48.

[2] https://www.midlandfunding.com/faqs/ (last visited on Oct. 12, 2015).

have an unshakable duty to follow state and federal law, as defined in more detail *infra*.

### III.   *SUMMARY JUDGMENT STANDARD*

Plaintiff concurs in Defendant's statement of the summary judgment standard.

### IV.   *ARGUMENT AND CITATION OF AUTHORITY*

#### A. *Defendant Cannot Rely On Legal Advice From The Court Clerk.*

Defendant misstates the source of the Statement of Claim form provided by the Georgia magistrate courts and attempts to elevate the form's status by implying that it is a creation "by the court." *See Doc. 30-2, p. 3.*  The magistrate court clerks provide these forms to the public for use in their courts, and presumably have been created by the court clerks themselves.   Defendant has provided no evidence otherwise.   It is well settled that court clerks cannot provide legal advice.   For example, on a recent visit to the Hall County Georgia Superior Court Clerk's office, counsel for Plaintiff recently observed the following on October 4, 2015:



Scenes similar to this can be observed in clerks' offices all over this state.

> Court clerks are public *servants* and thus are encouraged
> to be helpful to the public.  But no litigant may ask for or
> receive substantive advice of any kind from this Court's
> Clerk, and certainly no one may *rely* on any such advice
> even if it is (wrongfully at that) dispensed.   On
> substantive matters, including whether a litigant is free to
> disregard filing deadlines or wait around for someone to
> tell her to start litigating her case, the Clerk is simply *not*
> authorized to speak for the Court.  The national and local
> procedural rules (especially those that establish time
> limits for filing things like a notice of appeal, for serving
> process, etc.), as well as the court system as a whole,
> would quickly degenerate were litigants able to claim
> that "I called the Clerk's office and they said I could have
> extra time to file that," or that the Clerk excused some
> other filing requirement, etc.  Unless a *written* court
> ruling or notice permits otherwise, no litigant may claim,
> for example, "I was waiting to hear from the court" as an
> excuse for inaction where the rules demand action.

West v. Lewis Color Lithographers, 2007 WL 2071531, at *2 (S.D. Ga. 2007)

(emphasis in original).  *See Ga. R. Unif. Ct. App. A § C* ("Prohibition against

giving legal advice.  Court staff shall not provide legal advice. . . . 1.  If a court

user asks for legal advice, court staff should advise the person to seek the

assistance of an attorney.")

### B. An Attorney Is Expected To Know The Law.

> An attorney is expected to know the law relating to the
> matter for which he or she is representing a client, and an
> attorney is required to possess such a reasonable
> knowledge of the law as is ordinarily possessed by other

attorneys.  In addition, it is the attorney's duty, if he or she lacks knowledge of the statutes, to inform himself or herself, and an attorney owes his or her client the duty of diligent investigation and research.  Further, practitioners have an obligation to keep abreast of current changes in the law.

Accordingly, an attorney must be acquainted with the statutes and the settled rules of law and practice prevailing in the courts in the locality wherein the attorney practices and is responsible for loss to a client resulting from ignorance thereof.

7A C.J.S. Attorney & Client § 371 (internal citations omitted).

Defendant used forms that it knew or should have known failed to meet the explicit standards of OCGA §§ 15-10-43(c) and 15-10-48 in that the forms improperly require that an answer be *notarized*; and omit important disclosures regarding summoning witnesses, filing counterclaims, and requesting additional time to respond to the complaint.  Defendant's use of the outdated and erroneous statement of claim form violated the FDCPA because in using the form, Defendant provided false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.  Defendant also violated 15 U.S.C. § 1692e(10) – the false representation or use of deceptive means to collect or attempt to collect any debt or to obtain information concerning the debtor.  Finally, by misleading consumers like Plaintiff, Defendant

violated 15 U.S.C. § 1692f, which prohibits unfair or unconscionable means to collect or attempt to collect any debt.

Lawyers – not courts nor court personnel – are responsible for the content of the summons used by courts to obtain personal jurisdiction.  Archbold v. Cracker Barrel Old Country Store, Inc., 2013 WL 5272846 (M.D. Pa. Sept. 17, 2013):

> Counsel for Archbold emphasizes that it was the clerk of court and not counsel who issued and filed the defective summons, inferring that counsel should not be held responsible for errors that were not entirely her own.  The [Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565 (3d Cir. 1996)] panel expressly rejected this position, noting that the burden for correcting a defective summons, whether drafted by counsel or by the court, remains at all times with counsel.

Archbold at *3, fn. 3 (citing Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 567 (3d Cir. 1996)).

In Jeter v. Credit Bureau, Inc., the Eleventh Circuit adopted the "least-sophisticated consumer" standard to evaluate whether a debt collector's communication violates § 1692e of the FDCPA.  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).  By using outdated forms with incorrect information, Defendant misled consumers as to their rights and responsibilities in responding to a collection lawsuit.  Although the standard for evaluation is the

least-sophisticated consumer, even a sophisticated consumer would have been misled by the incorrect information that Defendant provided.

The attorney-agents for Midland did not keep up with the law regarding the proper form of summons to be issued in a magistrate court in this state. Instead, they relied upon forms posted on the Internet. To allow Defendant to escape liability on the basis that "the clerk told me to do it" or "I saw it on the Internet" cannot suffice.

Zevgolis v. Greenberg Law Firm, P.C., 2011 WL 251024 (E.D. Va. 2011) is no help to Defendant. In Zevgolis, the court held that "debtor's interrogatories"[3] were formal pleadings and not subject to the FDCPA's provisions that a debt collector disclose "in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." See 15 U.S.C. § 1692e(11). The Zevgolis case *did not* involve a court document created by a court clerk.

Scioli v. Goldman & Warshaw, P.C., 651 F.Supp.2d 273 (D. N.J. 2009) cited by Defendant suffers the same defect as Zevgolis. In Scioli, the debtor-

---

[3] "Debtor's interrogatories" is a distinct statutory procedure authorized by Va. Code § 8.01–506, whereby a judgment creditor, having already prevailed in litigation, may seek to compel the judgment debtor to appear to orally answer questions about his assets.

plaintiff claimed that the use of the summons created by the State of New Jersey which allowed for the itemization of monies (including attorney's fees) being sought by the debt-collector was false and deceptive because the attorney's fee would not be owed by the debtor unless and until the debt collector was successful in the case. Id. at 280. There, the court held that "the form summons created by the State of Hew [sic] Jersey, and used by countless lawyers and non-lawyers throughout the State" did not violate the FDCPA. Id. at 281. Here, contrary to Scioli, the State of Georgia *did not* create the form summons used when Defendant sued Plaintiff Abraham. In fact, the State of Georgia created a statutorily-authorized summons at OCGA § 15-10-48, which Defendant *chose not* to use.

### C. Midland Funding Is Vicariously Liable For The Acts Of Its Attorneys.

The most recent case addressing vicarious liability of large scale debt collectors like Midland is Gomez v. Resurgent Capital Servs., LP, 2015 WL 5610741 (S.D.N.Y. Sept. 23, 2015). In Gomez, the court stated:

> The legislative history of the FDCPA also indicates a congressional intent to include large debt collection entities such as the Resurgent Defendants within the FDCPA's ambit. . . . Neither the text of the FDCPA nor its legislative history indicates that Congress intended to draw a line between the activities of large debt collection agencies like the Resurgent Defendants, who buy consumer debt in bulk but contract out the actual collection work, and the ground-level operations that actually contact individual debtors. Rather, the Act's

recognition that "[e]xisting laws and procedures for redressing these injuries [were] inadequate to protect consumers" indicates that Congress intended to stop debt collectors large and small from using legalistic means to avoid liability for abusive practices.  See 15 U.S.C. § 1692(b).

Contrary to the Defendants' assertions, holding debt collectors vicariously liable for their agents' actions is consistent with traditional common law principles.  . . . [T]he common law "ordinarily make[s] principals liable for acts of their agents merely when the agents act 'in the scope of their authority.' "  [Cit.]  That authority need not even be authentic, due to "the established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority."  [Cit.]  Where a ground-level debt collector contacts a consumer, claiming that it is acting on behalf of an assignee that has purchased his or her debt, the collector acts on behalf of assignee and represents to the consumer that it has the assignee's permission to do what it does.  The assignee, as the party whose authority the ground-level debt collector is utilizing and the party who stands to benefit from any aggressive tactics, can be held liable under traditional common-law principles.

In addition to being consistent with the common law and with Congress' intention in enacting the FDCPA, holding debt collectors liable for FDCPA violations made on their behalf should incentivize them to actively supervise their agents with an aim toward minimizing abusive practices.  ***To allow debt collectors to shield themselves from liability by placing a long enough chain of entities in between themselves and the consumer would encourage willful blindness to the actions taken in their name.***

Id. at *7-*8 (emphasis added).  See also Pollice v. National Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000).

The court in Okyere v. Palisades Collection, LLC, 961 F.Supp.2d 508 (S.D. N.Y. 2013) specifically addressed the holding in Bodur v. Palisades Collection, LLC, 829 F.Supp.2d 246 (S.D. N.Y. 2011) cited by Defendant, and stated that "we respectfully disagree with the imposition of a requirement that an FDCPA plaintiff show specific acts of 'control' when considering a debt collection company's liability for its attorney's actions."  Id. at 516.

> We do not agree with a requirement that an FDCPA plaintiff show "control" because claims that a principal is liable for an agent's actions normally do not require such allegations.  Rather, "traditional vicarious liability rules" ordinarily make principals liable for acts of their agents merely when the agents act "in the scope of their authority."  [Cits.].
>
> Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to "control" its agent in material respects if the client wishes to do so.

Id.; see, e.g., Suquilanda v. Cohen & Slamowitz, LLP, 2011 WL 4344044 at *4 (S.D. N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal is a 'debt collector,' the principal may be liable for its agent's FDCPA violations."); see also, e.g., Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 405 (3d Cir. 2000) (debt collector that hired attorneys to collect a debt is liable for attorneys' FDCPA

violations "because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) ("In order to give reasonable effect to section 1692i [of the FDCPA], we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); DeFazio v. Leading Edge Recovery Solutions, LLC, 2010 WL 5146765 at *3 (D. N.J. 2010) ("[A]n entity that itself falls within the FDCPA's definition of debt collector may be found vicariously liable for unlawful collection activities carried out by another on its behalf." (quotations omitted)); Martsolf v. JBC Legal Grp., P.C., 2008 WL 275719 at *10 (M.D. Pa. 2008) ("An entity that owns a debt may be liable for FDCPA violations of a debt collector it engages to collect the obligation provided that the owner of the debt is itself a debt collector. . . . Hence, FDCPA liability levied upon an attorney debt collector may be equally imposed upon the attorney's debt collector client.").

Plaintiff recognizes the existence of a split in authority among the Courts of Appeals regarding the issue of vicarious liability under the FDCPA. The second line of cases follows the Ninth Circuit's holding in Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006) to require that any

vicarious liability in a FDCPA case be based on "general principles of agency," under which "to be liable for the actions of another, the principal must exercise control over the conduct or activities of the agent." However, even under this standard, Midland should be found vicariously liable, due to the immense amount of control and supervision exercised over its attorneys as shown in detail *infra*.

The additional cases cited by Defendant in an attempt to show that Midland is not vicariously liable for its attorneys' acts are all distinguishable.

Nash v. Green Tree Servicing, LLC, 943 F.Supp.2d 640 (E.D. Va. 2013), which Defendant relied upon to support its claim that it should be not held vicariously liable for its attorney-agents' acts, did not find that the debt collector was not vicariously liable for its attorney's actions, but rather found that the there was a sufficient question of fact making summary judgment inappropriate.

The Whiteside v. Infinity Cas. Ins. Co. decision of Judge Land in the Middle District of Georgia relied heavily on the Georgia Court of Appeals decision in Plant v. Trust Co. of Columbus, 168 Ga.App. 909 (1983). Judge Land stated:

> The [Plant] court first reasoned that the defendant retained the attorney to accomplish a certain result, without prescribing how that result should be accomplished. Because the defendant "retained no such controls of the details or performance of the attorney's work," the court found that a master-servant or employee-employer relationship did not exist.

Whiteside, 2008 WL 3456508 at *14 (M.D. Ga. 2008).  Here, however, Midland controls nearly every aspect of the details and performance of its attorneys' work, as shown in detail *infra*.

Midland states that "[a]fter placing the Account with Greene & Cooper, neither Midland Funding or Midland Credit Management, Inc. ("MCM") . . . advised, supervised, or controlled any efforts by Greene & Cooper to collection on the Account."  [*Doc. 30-2, p. 5*].  However, attached as Exhibit B to the Affidavit of Xenia Murphy [*Doc. 30-4*] is a heavily redacted copy of the Collection Agreement between Midland and the law firm of Greene & Cooper, LLP (hereinafter "Collection Agreement").   After much discussion with Midland's counsel, Plaintiff obtained a less-redacted version of the Collection Agreement, a copy of which is attached hereto as **Exhibit A**.[4]

The Collection Agreement is replete with controls and procedures that Greene & Cooper (sometimes referred to herein as "Firm") must adhere to in performing debt collection activities on Midland's behalf.   Paragraph 2.2.1 describes the manner of collection that Midland requires Greene & Cooper to adhere to and states that:

---

[4] The parties filed a Joint Motion To File Exhibit Under Seal, requesting the Court's approval to file Exhibit A under seal.  See *Docs. 40 and 40-1*.

> [T]he Firm shall abide by and conduct all of its activities
> in a manner consistent with the then current Procedures[5]
> and all applicable local, state, and federal laws, rules and
> regulations including without limitation:  (i) complying
> with the Fair Debt Collection Practices Act, as amended,
> The Right to Financial Privacy Action of 1978, as
> amended, the Fair Credit Reporting Act, as amended,
> Gramm-Leach-Bliley Act, as amended, the rules adopted
> under each such statute and any and all applicable state
> and local laws and rules regarding Firm's and MCM's
> debt collection activities, including buy not limited to late
> fees and interest; and (ii) avoiding threatening or
> implying that the Firm will take action that it does not
> intend to take or cannot take.   To the extent the
> Procedures at any given time conflict in any way with an
> applicable law, rule or regulation, the requirements of
> such applicable law, run and regulation will govern and
> control the Firm's conduct and activities under this
> Agreement.   It is the Firm's sole responsibility and
> obligation to ensure that any suit filed in connection with
> an Account is brought in the name of the real party in
> interest (i.e. either in the name of the respective MCM
> Owner, or MCM only in the event a lawsuit is permitted
> to be brought in the name of a collection agency).

The Agreement prohibits Greene & Cooper from engaging a third party for

servicing of an account without prior written approval by Midland [*Exhibit A ¶*

*2.2.2*]; and if Greene & Cooper is allowed by Midland to engage a third party for

servicing, Greene & Cooper remain liable to Midland on the account [*Exhibit A, ¶*

---

[5] " 'Procedures' mean the Midland Account Handling Procedures . . . which
procedures may be modified by MCM from time-to-time in its sole and absolute
discretion." *Exhibit A, p. 2.*

*2.2.2.2*].  At paragraph 2.3.1, Midland dictates to Greene & Cooper how it should

handle disputes by debtors, including a complaint, counter-claim or cross-

complaint:

> Immediately upon receipt of a dispute or a Claim, the
> Firm shall:  (i) cease all collection efforts on such
> Account; (ii) in the case of a Dispute only, add an
> appropriated Closing Code to the Account, close the
> Account, and return the Account (along with any and all
> information related thereto, including, without limitation,
> the Debtor's last known address and telephone number,
> and all information and documentation in support of the
> Closing Code) to MCM; and (iii) in the case of a Claim
> only, forward to the attention of the General Counsel of
> MSM, via facsimile <u>and</u> regular United States first class
> mail, a copy of the Claim.  . . .

Greene & Cooper is obligated to notify Midland if the firm becomes the

subject of *any* action, suit, arbitration or government department – whether

Midland-related or not – which may materially affect the ability of Greene &

Cooper to perform its obligations under the Agreement.  [*Exhibit A ¶ 2.3.2*].  The

Collection Agreement dictates:

- The amount of insurance coverage the Firm must carry [*Exhibit A ¶ 2.4.1*];

- That the Firm report *daily* on all activity and transactions that occur with *any* account being handled by the Firm [*Exhibit A ¶ 2.4.2*];

- How the Firm is to manage its technology and computer resources, including that the Firm have access to the Internet at all times [*Exhibit A ¶ 2.4.3*];

- That the Firm is to maintain records for a period of seven (7) years [*Exhibit A ¶ 2.4.5*];

- That the Firm maintain a restricted and segregated account in the name of MCM for deposit of all monies collected on MCM's behalf [*Exhibit A ¶ 3.1*]; and

- Much, much more.

Exhibit "B" to the Collection Agreement defines each and every process in debt collection, and in pain-staking detail, instructs Greene & Cooper on how Midland "expects" each task to be executed.  Plaintiff's counsel cannot imagine an attorney-client relationship more managed, supervised, advised, or controlled by a client.

Here, Greene & Cooper is a law firm debt collector, and Midland has been found to be a debt collector in a myriad of courts.[6]  Thus, Midland is vicariously liable for Greene & Cooper's acts.

### D. "Issuance" Of Summons Does Not Equate To Drafting Of A Summons.

In footnote 2 of Defendant's brief, it references the duties of a court clerk to issue the summons of the court.  But the "issuance" of a summons does not equate to the drafting of a legally-sufficient summons.  Issuance is merely signing of the summons by the clerk or his or her deputy to "conform" the summons for proper service of process.

_____

[6] While Midland denies in its answer to the Complaint that it is a debt collector within the definition of the FDCPA [see *Doc. 24, ¶ 9*], Midland has admitted *in judicio* numerous times that *it is* a debt collector.  See Jensen v. Pressler & Pressler, LLP and Midland Funding, LLC, 2:13-CV-01712-SDW-MCA (D. N.J.) Doc. 19-1, filed Sept. 3, 2013.  Additionally, the following courts have held that Midland is a FDCPA debt collector:  Campuzano–Burgos v. Midland Credit Mgmt., 550 F.3d 294 (3d Cir. 2008); Midland Funding, LLC v. Brent, 2010 WL 4628593 (N.D. Ohio 2010); Perez v. Midland Funding, LLC, 2010 WL 4117461 (N.D. Cal. 2010); Franklin v. Midland Funding, LLC, 2010 WL 3931106 (N.D. Ohio 2010); Wilder v. Midland Credit Mgmt., 2010 WL 2499701 (N.D. Ga. 2010); Burthlong v. Midland Funding, LLC, 2010 WL 420554 (E.D. La. 2010); Jones v. Midland Funding, LLC, 2009 WL 3107461 (D. Conn. 2009); Randall v. Midland Funding, LLC, 2009 WL 2358350 (D. Neb. 2009); Oberther v. Midland Credit Management, Inc., 45 F.Supp.3d 145 (D. Mass. 2014); Rodriguez v. Fulton Friedman & Gullace, LLP, 2012 WL 3756589 (S.D. Tex. 2012).

The qualifications for clerks of the Superior, State, and Magistrate Courts merely require that the clerk have a high school diploma or its recognized equivalent.  See OCGA § 15-6-50(b)(E) (Superior Court clerks); OCGA § 15-10-105(f) (Magistrate Court clerks).    The clerks of the Probate, Juvenile, and Municipal Courts are not subject to the qualification of having a high-school diploma or its equivalent, but are chosen by the judge of the particular court and must undergo mandatory training as outlined in the various statutes governing these offices.  Each of these clerks of court is prohibited from the practice of law.  Therefore, an attorney following a clerk's advice as to which form is legally sufficient, proceeds at his or her own peril.

### E. Midland's Violations of the FDCPA Were Not the Result of Bona Fide Errors.

Defendant Midland seeks to invoke the *bona fide* error defense, pursuant to 15 U.S.C. § 1692k(c), because it believes that the use of a form from the clerk's office forgives Defendant's error of law.   Defendant is wrong.

The United States Supreme Court in addressing the FDCPA's *bona fide* error defense in <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573 (2010) stated that "[w]e have long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.' " <u>Id.</u> at 581 (citing <u>Barlow v. United States</u>, 7 Pet. 404, 411,

8 L.Ed. 728 (1833)).  "Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."  Id. at 582-583.

### 1. Defendant Midland And Its Attorneys Did Not Maintain Procedures "Reasonably Adapted To Avoid" This Error.

Defendant correctly recites three requirements of 15 U.S.C. § 1692k(c) for invoking the *bona fide* error defense:  (1) the error was not intentional; (2) the violation was a "*bona fide* error," and (3) the violation occurred despite the maintenance of procedures reasonably adapted to avoid any such error.   This defense is an affirmative defense for which the debt buyer has the burden of proof. Owen v. I.C. System, Inc., 629 F.3d 1263, 1271 (11th Cir. 2011).

Even if Defendant is provided with the benefit of the doubt that its misrepresentation of the law in its collection lawsuits was unintentional, Defendant still fails to meet the second and third requirements of the *bona fide* error defense. As Defendant points out, to invoke this affirmative defense, a defendant must show that the error was "objectively reasonable."  *Doc. 30-2 p. 21*, citing Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1353 (11th Cir. 2009).  However, Midland's *bona fide* error defense really amounts to nothing more than claiming ignorance of the law.  It is not "objectively reasonable" to rely upon an outdated form rather than the amended statute.

Defendant's failure to act in an objectively reasonable manner dovetails with its complete failure to meet the third element of the *bona fide* error defense – maintaining a reasonable procedure to avoid the error.  A large debt collector such as Defendant surely knows that the laws governing debt collection vary from state to state and are routinely amended.  In fact, its agreement with its attorney-agents require them to comply with state law.  See *Exhibit A, ¶ 2.2.1*.  Defendant bears the burden of proof to show Defendant and its attorney-agents had a reasonable procedure in place to keep up with the law.  Almost ten months after OCGA § 15-10-43(c) and OCGA § 15-10-48 were significantly amended, Defendant and its attorney-agents were apparently ignorant as to the change.  Defendant has failed to show it had a reasonable procedure to keep up with the law governing its collection business.  The best argument that Midland can come up with is that it relied upon stale forms that were diametrically opposed to the amended law.  There is a big difference between requiring a verification of an answer and not requiring a verification of an answer.[7]  How could Defendant have missed such a significant change in the law?

---

[7] OCGA § 15-10-43(c).

Here, there is no procedure to avoid the error committed in this case.  In the Affidavit of Kyle Cooper, offered by Defendant to show its attorneys' "reasonably adapted procedures to avoid the specific error at issue," Defendant outlines at paragraphs 4, 5, a, b, and c, that Greene & Cooper uses the clerk's forms, makes sure it is using the current form from the clerk, and an attorney reviews the form to make sure that it is the same form presented by the clerk of that particular court. [*Doc. 30-5*].   Nowhere in Mr. Cooper's affidavit does he state that an attorney reviews the law (and particularly OCGA §§ 15-10-43(c) and 15-10-48) to ensure that the form used by Greene & Cooper complies with the current state of the law. Again, blind reliance on the legal advice of a court clerk is not subject to the defense of a *bona fide* error.

The two cases[8] cited by Defendant to support its *bona fide* error defenses are easily distinguishable. In <u>Kort v. Diversified Collection Services, Inc</u>., 394 F.3d 530 (7th Cir. 2005), the debt collector relied upon language that the Department of Education required in the garnishment notice that the debt collector used.[9]  Id. at 537.  The court pointed out that if the debt collector erroneously applied the law in

---

[8] *Doc. 30-2 p. 18.*

[9] "[T]he DOE form that DCS was using was compulsory, not optional, . . ." <u>Id</u>. at 537.

its garnishment notice, it did so because the Department of Education, "the government agency invested with regulatory authority" misinterpreted the law. Id. at 538.  First of all, in the instant case, there was no misinterpretation of the law. OCGA § 15-10-43(c) and OCGA § 15-10-48 are perfectly clear as to the information that must be included in a statement of claim.  The statutes require no interpretation.  Second, the clerk is not invested with regulatory authority as was the Department of Education in Kort.  Finally, the debt collector in Kort was in a much more sympathetic position; the Department of Education required the debt collector to use the DOE's form garnishment notice.  In this case, Midland was not required to use an outdated form.  Instead, Defendant used an outdated form because Defendant and its attorney-agents did not keep up with the law.

The second case cited by Defendant, Henderson v. Biel, 2007 WL 2286129 (S.D. Ind. 2007) also had to do with the misinterpretation of the law by a debt collector.  In Henderson, the district court found that the summons at issue *correctly* stated Indiana procedure and was neither false nor misleading.  Id. at *8. The rest of the opinion regarding the *bona fide* error defense is *dicta*.   In addressing the *bona fide* error defense, the court noted that the challenged language in the summons was sufficiently similar to that of the clerk's form summons that any error by the debt collector was a good faith error.  Id. at *9.  Finally, the court

noted that the debt collector's adoption of the clerk's *interpretation* of the law was reasonable. <u>Henderson</u> is inapplicable because the form summons used by the debt collector was actually found to be a correct statement of the law. Additionally, the instant case has nothing to do with the interpretation of a confusing statute. OCGA § 15-10-43(c) and OCGA § 15-10-48 are clear in their requirements. Defendant does not allege that it misinterpreted the statute. What Defendant is really asking this Court to do is excuse Defendant for significantly misrepresenting the law to Plaintiff because Defendant did not know the statute existed in its amended form.

In <u>Hulshizer v. Global Credit Servs., Inc.</u>, 728 F.2d 1037 (8th Cir. 1984), the debt collector sent a dunning letter that did not "disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" as required by 15 U.S.C. § 1692e(11). The debt collector asserted the *bona fide* error defense based upon its reliance on a FTC staff attorney letter, and that the violation was unintentional and thus protected under 15 U.S.C. § 1692k(c). <u>Id.</u> at 1038. The <u>Hulshizer</u> court held that:

> The letter clearly states that it "represents the staff's present enforcement position. It is informal in nature and as such is not binding on the Commission." <u>See</u> 16 C.F.R. §§ 1.1-1.3 (1983). Furthermore, Global's action was intentional in that it consciously chose to follow the informal advice of a Commission staff attorney and

> representatives of the American Collectors Association
> rather than the clear language of the statute.  In addition,
> we agree with the Ninth Circuit that reliance on the
> advice of counsel or a mistake about the law is not
> protected by the "[un]intentional and . . . *bona fide* error"
> defense of 15 U.S.C. § 1692k(c).  [Cit.]

<u>Id.</u>

## V. <u>*CONCLUSION*</u>

For the foregoing reasons, arguments and citations of authority, Plaintiff respectfully requests that this Honorable Court DENY Defendant's Motion for Summary Judgment.

Respectfully submitted, this 13th day of October, 2015.

**HURT STOLZ, P.C.**


s/  James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No. 380104

345 West Hancock Avenue
Athens, Georgia 30601
(706) 3895-2750
Facsimile:  (866) 766-9245
jhurt@hurtstolz.com


**THE KOVAL FIRM, LLC**

s/ Steven H. Koval
By:  Steven H. Koval
Georgia Bar No. 428905

3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA  30305

Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
steve@kovalfirm.com

                              **ADDLETON LTD CO.**

                               s/ David F. Addleton
                              By:  David F. Addleton
                              Georgia Bar No.:  005050

355 Cotton Avenue
Macon, Georgia 31201
Telephone: (404) 797-7166
Facsimile: (888) 398-0898
dfaddleton@gmail.com            **ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE, FONT AND MARGINS**</u>

I hereby certify that on this day, I electronically filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS, and PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS WHICH PRESENT A GENUINE ISSUE FOR TRIAL, with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to all counsel of record and which sent notification of such filing to the party listed below pursuant to L.R. 5.1(A)(3).

> R. Frank Springfield
> fspringf@burr.com
> Rachel Friedman
> rfriedman@burr.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court pursuant to L.R. 5.1.

Respectfully submitted, this 13th day of October, 2015.

**HURT STOLZ, P.C.**

s/  James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No. 380104

345 West Hancock Avenue
Athens, Georgia 30601

(706) 3895-2750
Facsimile:  (866) 766-9245
jhurt@hurtstolz.com                    **ATTORNEY FOR PLAINTIFF**